**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Stewart, Jr., | No. CV 12-1163-PHX-RCB (LOA) |
| Plaintiff, | **O R D E R** |
| vs. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

On May 31, 2012, Plaintiff Thomas Stewart, Jr., who is confined in the Arizona State Prison Complex-Yuma, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. In a June 20, 2012 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On July 9, 2012, Plaintiff filed a Motion for Extension of Time to File First Amended Complaint (Doc. 8). On August 16, 2012, Plaintiff filed his First Amended Complaint (Doc. 11). The Court will grant the Motion for Extension of Time and accept the First Amended Complaint as timely filed. The Court will dismiss the First Amended Complaint and this action.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against

1  a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C.
2  § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised
3  claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
4  be granted, or that seek monetary relief from a defendant who is immune from such relief.
5  28 U.S.C. § 1915A(b)(1), (2).

6  A pleading must contain a "short and plain statement of the claim *showing* that the
7  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not
8  demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
9  unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
10  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
11  statements, do not suffice." Id.

12  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
13  claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,
14  550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content
15  that allows the court to draw the reasonable inference that the defendant is liable for the
16  misconduct alleged." Id. "Determining whether a complaint states a plausible claim for
17  relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
18  experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual
19  allegations may be consistent with a constitutional claim, a court must assess whether there
20  are other "more likely explanations" for a defendant's conduct. Id. at 1951.

21  But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
22  must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th
23  Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards
24  than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,
25  94 (2007) (*per curiam*)).

26  **II.    First Amended Complaint**

27  In his three-count First Amended Complaint, Plaintiff sues the following Defendants:
28  Arizona Department of Corrections Director Charles Ryan; Yuma Complex Warden R.

1 Bock; Deputy Wardens Franco and Bradley; Contract Paralegal Ulibarri; Corrections
2 Officers II Kofta, Cortez, Marcelletta, and Rodriguez; and Corrections Officers III Yanez,
3 Estrada, Wilcox, and Solis.

4 In Count I, Plaintiff alleges that his First, Eighth and Fourteenth Amendment rights
5 to access to the courts were denied when Defendants denied him phone calls to the courts and
6 wrongfully confiscated his law books and "Blackstone Career Institute Law educational legal
7 text books." Plaintiff claims that denial of the books "deprived Plaintiff [of] the right to
8 access to the courts the [C]ourt of Appeals for the Ninth Circuit."

9 In Count II, Plaintiff claims that his Eighth and Fourteenth Amendment due process
10 rights were violated when Defendant Estrada charged him with false disciplinary violations
11 and Defendant Bradley failed to correct the errors.

12 In Count III, Plaintiff alleges that Defendants Franco and Bradley violated his First,
13 Eighth, and Fourteenth Amendment rights by "allowing their staff member to deprive the
14 Plaintiff of the basic necessities to challenge his conviction and the right to communicate
15 with other prisoners to collect data." Plaintiff also claims that Defendants failed to process
16 his grievances and that he has been charged with false disciplinary violations in retaliation
17 for exercising his First Amendment rights.

18 Plaintiff seeks money damages.

19 **III.    Failure to State a Claim**
20     **A.    Count I**

21 The right of meaningful access to the courts prohibits officials from actively
22 interfering with inmates' attempts to prepare or file legal documents. Lewis v. Casey, 518
23 U.S. 343, 350 (1996). The right of access to the courts is only a right to bring petitions or
24 complaints to federal court and not a right to discover such claims or even to ligate them
25 effectively once filed with a court. Id. at 354. The right "guarantees no particular
26 methodology but rather the conferral of a capability–the capability of bringing contemplated
27 challenges to sentences or conditions of confinement before the courts." Id. at 356.

28 As a matter of standing, for an access-to-courts claim, a plaintiff must show that he

1  suffered an "actual injury" with respect to contemplated litigation. Id. at 349. To show
2  actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the
3  defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim
4  that he wished to present. Id. at 352-53.

5  "[T]he injury requirement is not satisfied by just any type of frustrated legal claim."
6  Id. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to
7  transform themselves into litigating engines capable of filing everything from shareholder
8  derivative actions to slip-and-fall claims." Id. at 355. The nonfrivolous claim must be a
9  direct or collateral attack on the inmate's sentence or a challenge to the conditions of his
10 confinement. Id. "Impairment of any *other* litigating capacity is simply one of the incidental
11 (and perfectly constitutional) consequences of conviction and incarceration." Id. (emphasis
12 in original).

13 Although Plaintiff alleges that he was unable to telephone the court and that the
14 confiscation of his legal books prevented him from filing a pleading, Plaintiff has not alleged
15 an actual injury. Plaintiff has not alleged that Defendants prevented him from filing
16 documents with the court or that he was prevented from bringing a non-frivolous claim to
17 court. The Court will dismiss Count I for failure to state a claim.

18 **B.     Count II**

19 In analyzing a due process claim, the Court must first decide whether Plaintiff was
20 entitled to any process, and if so, whether he was denied any constitutionally required
21 procedural safeguard. Liberty interests which entitle an inmate to due process are "generally
22 limited to freedom from restraint which, while not exceeding the sentence in such an
23 unexpected manner as to give rise to protection by the Due Process Clause of its own force,
24 nonetheless imposes atypical and significant hardship on the inmate in relation to the
25 ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal
26 citations omitted).

27 To determine whether an inmate is entitled to the procedural protections afforded by
28 the Due Process Clause, the Court must look to the particular restrictions imposed and ask

- 4 -

1 whether they "'present the type of atypical, significant deprivation in which a state might
2 conceivably create a liberty interest.'" Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995)
3 (quoting Sandin, 515 U.S. at 486).  "Atypicality" requires not merely an empirical
4 comparison, but turns on the importance of the right taken away from the prisoner. See Carlo
5 v. City of Chino, 105 F.3d 493, 499 (9th Cir. 1997).  To determine whether the sanctions are
6 atypical and a significant hardship, courts look to prisoner's conditions of confinement, the
7 duration of the sanction, and whether the sanction will affect the duration of the prisoner's
8 sentence.  See Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

9       Plaintiff was not entitled to any due process procedural protections because he does
10 not allege that he suffered atypical and significant hardships as a result of his disciplinary
11 convictions.  See Sandin, 515 U.S. at 475-76, 487 (30 days' disciplinary segregation is not
12 atypical and significant); Smith v. Mensinger, 293 F.3d 641, 654 (3rd Cir. 2002) (seven
13 months of disciplinary confinement "does not, on its own, violate a protected liberty
14 interest"); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (two and one-half years'
15 administrative segregation is not atypical and significant); Rizzo v. Dawson, 778 F.2d 527,
16 530 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even
17 though the degree of confinement may be different and prison life may be more disagreeable
18 in one institution than in another" without violating a prisoner's due process rights); Lucero
19 v. Russell, 741 F.2d 1129 (9th Cir. 1984) (administrative transfer to maximum security
20 without a hearing does not infringe on any protected liberty interest).

21       In addition, to the extent that Plaintiff claims Defendant Bradley denied his grievances
22 regarding the false disciplinary charges, he has also failed to state a claim.  The mere denial
23 of a grievance does not give rise to the inference of active unconstitutional behavior.  Where
24 a defendant's only involvement in the allegedly unconstitutional conduct is the denial of
25 administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged
26 unconstitutional behavior does not amount to active unconstitutional behavior for purposes
27 of § 1983.  Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

28       Accordingly, Plaintiff has failed to state a claim in Count II and the Court will dismiss

- 5 -

1 this claim.

2     **C.**    **Count III**

3 Although *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Id. Plaintiff's allegations in Count III are extremely vague.

9 To the extent that Plaintiff claims he was prohibited from communicating freely with other inmates, he has failed to state a claim. Imprisonment does not automatically deprive a prisoner of First Amendment rights, but imprisonment does permit greater restriction of such rights than would be the case elsewhere. Beard v. Banks, 548 U.S. 521, 528 (2006). Courts owe "'substantial deference" to the professional judgment of prison administrators.'" Id. (quoting Overton v. Bazzetta, 539 U.S. 126, 132 (2003)). "[R]estrictive regulations are permissible if they are "'reasonably related' to legitimate penological interests . . . and are not an 'exaggerated response'" to such objectives." Id. (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). "Prevention of criminal activity and the maintenance of prison security are legitimate penological interests." O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir.1996); see, *e.g.*, Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (*per curiam*) (noting that security, order, and rehabilitation are legitimate penological interests which justify the inspection of outgoing prisoner mail).

22 Plaintiff has not alleged facts showing that Defendants regulated his speech without a legitimate penological interest.

24 To the extent that Plaintiff claims Defendant Garcia retaliated against him, he as also failed to state a claim. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm)

1  and (5) did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408
2  F.3d 559, 567-68 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997)
3  (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation
4  for the exercise of a constitutionally protected right, and (2) that the action "advanced no
5  legitimate penological interest").  The plaintiff has the burden of demonstrating that his
6  exercise of his First Amendment rights was a substantial or motivating factor behind the
7  defendants' conduct.  Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274,
8  287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

9  Plaintiff claims that Defendant Garcia issued a disciplinary ticket to Plaintiff for
10 inappropriate language because he overheard Plaintiff telling another inmate "fuck ADOC's
11 policies, and to fuck the person who's responsible for their policies refer[r]ing to Charles
12 Ryan."  Plaintiff has not alleged that he was retaliated against for the exercise of a
13 constitutional right, that he suffered more than minimal harm, or that Defendant Garcia's
14 action did not reasonably advance a legitimate penological goal.

15 Plaintiff has failed state a claim in Count III, and the Court will dismiss Count III.

16 **IV.   Dismissal without Leave to Amend**

17 Because Plaintiff has failed to state a claim in his First Amended Complaint, the Court
18 will dismiss the First Amended Complaint.  "Leave to amend need not be given if a
19 complaint, as amended, is subject to dismissal."  Moore v. Kayport Package Express, Inc.,
20 885 F.2d 531, 538 (9th Cir. 1989).  The Court's discretion to deny leave to amend is
21 particularly broad where Plaintiff has previously been permitted to amend his complaint.
22 Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Repeated
23 failure to cure deficiencies is one of the factors to be considered in deciding whether justice
24 requires granting leave to amend.  Moore, 885 F.2d at 538.

25 The Court finds that Plaintiff's claims cannot be cured by further amendment.
26 Therefore, the Court, in its discretion, will dismiss Plaintiff's First Amended Complaint
27 without leave to amend.

28 . . .

### V. Motion for Emergency Court Order

On July 25, 2012, Plaintiff filed a Motion for Emergency Court Order in which he asks that the Court order Defendants to provide him with photocopies for his habeas case. In light of the Court's dismissal of this action, the Court will deny as moot the Motion for Emergency Order.

**IT IS ORDERED:**

(1) Plaintiff's July 9, 2012 Motion for Extension f Time (Doc. 8) is **granted**; the Court will accept the August 16, 2012 First Amended Complaint as timely filed.

(2) Plaintiff's July 25, 2012 Motion for Emergency Court Order (Doc. 9) is **denied**.

(3) Plaintiff's First Amended Complaint (Doc. 11) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(4) The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(5) The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 10th day of September, 2012.

_____
Robert C. Broomfield
Senior United States District Judge